IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ANTHONY PANZICA,

    Plaintiff,

v.                                        No. 12-1026

CORRECTIONS CORPORATION OF
AMERICA, *et al.,*

    Defendants.

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

*INTRODUCTION*

The Plaintiff, Anthony Panzica, brought this action on November 18, 2011 against the Defendants, Corrections Corporation of America ("CCA"); Hardeman County Correctional Facilities Corporation; Hardeman County Correctional Facility ("HCCF"); Joe Easterling, in his official and individual capacities as warden of HCCF; and various John and Jane Does. The Plaintiff alleged violations of the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983. He also asserted claims under Tennessee state law. Before the Court is the motion of Defendants CCA, Hardeman County Correctional Facilities Corporation, HCCF and Easterling for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or for summary judgment under Fed. R. Civ. P. 56. (D.E. 34.)

*STANDARD OF REVIEW*

Rule 12(b)(6) permits the Court to dismiss a complaint for failure to state a claim upon which relief may be granted. "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment

under Rule 56." Fed. R. Civ. P. 12(d). Because matters outside the pleadings have been presented to and considered by the Court in connection with the instant motion, it will be treated as a motion for summary judgment.

Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To survive summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Pucci v. Nineteenth Dist. Ct., 628 F.3d 752, 759-60 (6th Cir. 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)) (internal quotation marks omitted). "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." Id. at 759 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 748 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 255, 106 S. Ct. 2505). "Entry of summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)) (internal quotation marks omitted).

*FACTS*

Prior to setting out the undisputed facts presented in this case, the Court deems it necessary to address the parties' compliance with the Local Rules of this district concerning motions for

summary judgment. The Local Rules require that such motions

> be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by specific citation to the record.

LR 56.1(a). As for the duty of the non-movant, the Local Rules provide as follows:

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1) agreeing that the fact is undisputed;
>
> (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>
> (3) demonstrating that the fact is disputed.
>
> Each disputed fact must be supported by specific citation to the record. Such response shall be filed with any memorandum in response to the motion. The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant.

LR 56.1(b). In his response to a Rule 56 motion, the non-movant may also set forth a concise statement of additional facts he considers material and which he contends indicate the existence of a genuine issue for trial. Id. "Each such [additional] disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute." Id. If the moving party files a reply, it must "respond to these additional facts by filing a reply statement in the same manner and form" as specified in subsection (b) of the Local Rule. LR 56.1(c). Failure to respond to the movant's statement of facts or to the non-moving party's statement of additional facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment." LR 56.1(d).

3

While the Defendants set forth their statement of undisputed facts in accordance with LR 56.1, the Plaintiff utterly failed to respond to those facts pursuant to the Local Rule. Rather, Panzica merely set forth his own undisputed facts.[1] Thus, the Court will consider the Defendants' statement of material facts to be undisputed for purposes of the instant motion for summary judgment. *See* LR 56.1(d); Featherston v. Charms Co., No. 4-2157Ml/P, 2005 WL 1364621, at *1 n.1 (W.D. Tenn. May 10, 2005) (plaintiff responded to defendant's statement of material facts by setting forth a two-page narrative fact section without specifically addressing or disputing defendant's statement, resulting in defendant's facts being deemed admitted by the court). The Defendants in their reply brief responded to the Plaintiff's factual statements, presumably out of an abundance of caution in the event the Court considered the statements "additional" facts under Local Rule 56.1(b). The Court will consider these facts to the extent they are not disputed by the Defendants.

The following facts relevant to the Court's determination of the instant motion are undisputed. Panzica pled *nolo contendere* to a single count of statutory rape by an authority figure on December 12, 2008.[2] He was sentenced to three years confinement, which amounts to 1,095 days. Plaintiff was granted seventy-four days toward his sentence for time spent as a pretrial detainee from September 25 through December 8, 2008. He began serving his sentence at the West Tennessee State Penitentiary and, on February 4, 2009, was transferred to HCCF, where he was

---

[1] Some of the facts set out in Plaintiff's statement of undisputed facts are identical to those of the Defendants.

[2] The Defendants' statement of undisputed facts and memorandum, as well as the Plaintiff's responsive memorandum, state that Panzica's plea was entered in December 2009, citing to his complaint. However, according to the complaint and Plaintiff's affidavit, the plea was taken in December 2008. The Court assumes, based on the entirety of the record, that the 2008 date is correct.

housed until his release on November 19, 2010. Panzica served a total of 785 days of incarceration.

The Tennessee Department of Corrections awarded Plaintiff 146 days of sentence credit in 2009 and 148 days in 2010. In December 2009, he began a personal review of his sentence credit records. On December 7, 2009 and January 13, 2010, Plaintiff made requests for information concerning his sentence credit time, which was received by him. He claims in this lawsuit that, because time credits for good behavior and/or work to which he was entitled under Tennessee law were not properly applied, he was wrongfully held by the Defendants for at least forty-two days past his correct release date.

*ASSERTIONS OF THE PARTIES AND ANALYSIS*

Federal Claims.

Plaintiff's federal claims arise from 42 U.S.C. § 1983, which states in pertinent part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

The statute "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." Flagg v. City of Detroit, 715 F.3d 165, 173 (6th Cir. 2013) (internal quotation marks omitted), *reh'g & reh'g en banc denied* (June 18, 2013). In order to succeed on a § 1983 claim, a plaintiff must show that the defendant "acted under color of state law" and that its "conduct deprived the plaintiff of rights secured under federal law." Handy-Clay v. City of Memphis, 695 F.3d 531, 539 (6th Cir. 2012).

The Defendants argue that Plaintiff's § 1983 claims are barred by the statute of limitations. "The statute of limitations for a § 1983 action is the state statute of limitations applicable to personal

5

injury actions under the law of the state in which the § 1983 claim arises." Porter v. Brown, 289 F. App'x 114, 116 (6th Cir. 2008) (quoting Eidson v. Tenn. Dep't of Children's Servs., 510 F.3d 631, 634 (6th Cir. 2007)) (internal quotation marks omitted). In Tennessee, the limitations period for § 1983 actions is the one year provided for in Tennessee Code Annotated § 28-3-104(a). Id. Federal standards, however, determine when the claim accrues. Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007), *reh'g denied* 549 U.S. 1362, 127 S. Ct. 2090, 167 L. Ed. 2d 807 (Apr. 16, 2007). The Sixth Circuit has held that "[g]enerally, the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs., 606 F.3d 301, 307 (6th Cir.) (internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 131 S. Ct. 804, 178 L. Ed. 2d 538 (2010); *see also* Guy v. Lexington-Fayette Urban Cnty. Gov't, 488 F. App'x 9, 14 (6th Cir.) (same), *cert. denied*, ___ U.S. ___, 133 S. Ct. 547, 184 L. Ed. 2d 343 (2012). Stated differently, courts have "looked to what event should have alerted the typical lay person to protect his or her rights." A to Z, Inc. v. City of Cleveland, 281 F. App'x 458, 460 (6th Cir. 2008) (quoting Hughes v. Vanderbilt Univ., 215 F.3d 543, 548 (6th Cir. 2000)).

Defendants maintain that it is undisputed Panzica began inquiring about his sentence credit records as early as December 2009 and, therefore, knew or should have known of his injury more than one year prior to the initiation of this action on November 18, 2011. By way of response, the Plaintiff insists that the statute of limitations began to run on November 19, 2010, his release date, citing Wallace.

Wallace was arrested upon confessing to a shooting and, after unsuccessfully attempting to suppress his statement as the result of an unlawful arrest, convicted of first degree murder. Wallace,

6

549 U.S. at 386, 127 S. Ct. at 1094. The appellate court remanded the matter for a new trial and the charges were subsequently dropped. Id. at 387, 127 S. Ct. at 1094. He sued the municipality and several police officers under § 1983 for unlawful arrest in violation of the Fourth Amendment. Id. at 384, 387, 127 S. Ct. at 1092, 1094. In considering the case on appeal, the United States Supreme Court stated that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends. Thus, to determine the beginning of the limitations period in this case, we must determine when petitioner's false imprisonment came to an end." Id. at 389, 127 S. Ct. at 1096 (internal citations & quotation marks omitted). It is this language upon which Panzica relies in insisting that the statute of limitations in this case began to run on his release from custody.

However, he has taken the passage out of context. In the case before it, the Supreme Court found that "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process* -- when, for example, he is bound over by a magistrate or arraigned on charges." Id., 127 S. Ct. at 1096. Here, of course, Panzica was not falsely imprisoned as a result of an unlawful arrest; he was legally detained at the time he was taken into the state's custody.

Significantly for purposes of this case, the Wallace Court observe that "petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date[.]" Id. at 390, 127 S. Ct. at 1096. The Court went on to articulate that

> Petitioner asserts that the date of his release from custody must be the relevant date in the circumstances of the present suit, since he is seeking damages up to that time. . . . Even assuming, however, that all damages for detention pursuant to legal process could be regarded as consequential damages attributable to the unlawful

7

> arrest, that would not alter the commencement date for the statute of limitations. Under the traditional rule of accrual[,] the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

Id. at 391, 127 S. Ct. at 1096-97 (internal citations & quotation marks omitted).

Thus, as pointed out by the Defendants, Wallace falls far short of supporting Panzica's assertion that his claim accrued upon his release from custody. Rather, the movants bring to the Court's attention the unpublished case of Acree v. Metropolitan Government of Nashville and Davidson County, No. 3:11-0982, 2012 WL 2072760 (M.D. Tenn. June 8, 2012), *order entered by* 2012 WL 2072950 (M.D. Tenn. June 8, 2012). Acree was convicted of criminal contempt of court and sentenced to 330 days of incarceration. Acree, 2012 WL 2072760, at *1. He sued the city for false imprisonment under § 1983, claiming that, while his sentence required that he be released on November 4, 2010, the sheriff's department computer erroneously reflected a release date of December 4, 2010. Id. He further averred that his complaints about the error fell on deaf ears. Id. Pursuant to an appeal of his contempt ruling, his sentence was reduced to 240 days with a release date of August 6, 2010. Id.

Acree cited to the same language from Wallace referred to by Panzica in response to the defendant's assertion that the statute of limitations on his § 1983 claim had expired and argued, like the Plaintiff here, that, based on the Supreme Court's determination, his cause of action accrued on his release from imprisonment. Id. at *2. The court rejected his contention for the same reasons noted by the undersigned herein, and concluded that his claim was untimely in light of his knowledge on August 6, 2010 that he was being held longer than he should have been under the

8

sentence imposed and the undisputed fact that he complained to jailers on that date and thereafter. Id. at *3.

In this case, according to Panzica's own allegations, he realized in December 2009 that he was not receiving the proper number of good time credits and commenced discussions with prison officials regarding the matter. Indeed, in his affidavit submitted in response to the instant motion, he stated that "[o]n or about December 9, 2009, I spoke in person with Katherine Cole (HCCF employee), IC Pod Case Manager, to have an investigation conducted regarding NOT receiving the correct amount good day credits on my time sheet" and that "[f]rom about December 8, 2009 until March 2010, I had numerous conversations with Ms. Cole about the incorrect amount of good day credits I was receiving[.]" (D.E. 45-2 ¶¶ 19, 21.) Therefore, because it is clear from his own evidence that Plaintiff knew as early as December 2009 that he was not being properly credited for good behavior or work time, which would result in his being held longer than he should have been, the federal claims set forth in his complaint, filed nearly two years later, were untimely.[3]

State Claims.

> The basis for jurisdiction in this case is the existence of a federal question.
>
> The doctrine of supplemental jurisdiction, originally set forth in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), was codified by 28 U.S.C. § 1367[, which] grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (internal quotation marks omitted).

---

[3]Based on the Court's determination that Plaintiff's federal claims were filed outside the statute of limitations, it need not address Defendants' assertions with respect to the merits of those claims.

In determining whether to exercise supplemental jurisdiction, a court should consider and weigh certain factors, including "the values of judicial economy, convenience, fairness, and comity." Id. at 951-52 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)) (internal quotation marks omitted). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims[.]" Id. at 952 (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)). There appear to be no factors present here that would support an exercise of supplemental jurisdiction. Accordingly, the Court declines to exercise its jurisdiction over the Plaintiff's state law claims. *See* Frodge v. City of Newport, 501 F. App'x 519, 534 (6th Cir. 2012) (where summary judgment had been granted on plaintiff's federal claims and plaintiff pointed to no factors weighing in favor of exercise of supplemental jurisdiction, district court did not abuse its discretion in declining to address state law claims).

## *CONCLUSION*

For the reasons articulated herein, the Defendants' motion for summary judgment is GRANTED and this matter is DISMISSED in its entirety.

IT IS SO ORDERED this 3rd day of July 2013.

                                                  s/ J. DANIEL BREEN
                                                  UNITED STATES DISTRICT JUDGE